In re NAPCO GRAPHIC ARTS,
INC., Debtor.

WISCONSIN DEPARTMENT OF IN-
DUSTRY, LABOR AND HUMAN
RELATIONS, Plaintiff–Appellant,

v.

R. Arthur LUDWIG, et al.,
Defendants–Appellees.

No. 85–C–1240.

United States District Court,
E.D. Wisconsin.

Feb. 29, 1988.

As Amended March 9, 1988.

John W. Calhoun, Asst. Atty. Gen., Madison, Wis., for DILHR.

Jack U. Shlimovitz, Ludwig & Shlimovitz, S.C., Milwaukee, Wis., for R. Arthur Ludwig, Trustee.

Anne Willis Reed, Reinhart, Boerner, Van Deuren, Norris & Rieselbach, S.C., Milwaukee, Wis., for Phillip K. Harvey.

Thomas L. Shriner, Jr., Mark F. Foley, Milwaukee, Wis., for First Wisconsin Financial Corp.

Arthur Moglowsky, Bass, Goldstein & Moglowsky, S.C., Milwaukee, Wis., for Atlas Leasing Corp.

## DECISION AND ORDER

WARREN, Chief Judge.

Presently pending is an appeal from a bankruptcy court decision. Plaintiff, the Wisconsin Department of Industry, Labor and Human Relations ("DILHR"), appeals from a decision issued by Chief Judge C.N. Clevert granting summary judgment in favor of the defendants in this matter. The defendants in this matter are R. Arthur Ludwig ("Ludwig"), Napco Graphic Arts, Inc.'s, bankruptcy trustee; First Wisconsin Corporation ("FWC"), a secured creditor; Phillip Harvey ("Harvey"), an agent for other secured creditors; and Atlas Leasing Corporation ("Atlas"), Napco's equipment lessor.

I. *Statement of Background Facts*

The following facts are undisputed and are quoted from Judge Clevert's opinion, 51 B.R. 757, 760:

On July 23, 1980, Napco held an option to purchase its leased premises which it assigned to Harvey. Napco further assigned the option to FWC on August 29, 1980, to secure repayment of a $150,000 note. As a result, Harvey subordinated his interest in the option to purchase to FWC. Ludwig was appointed trustee after Napco filed its petition under Chapter 7 of the Bankruptcy Code on March 2, 1981. He thereafter entered an agree-

ment with Atlas Leasing to sell Napco's leased equipment free and clear of all liens and interests with any sums in excess of the balance due to Atlas to be held pending the further order of this court. Another agreement was reached with FWC and Phillip Harvey for the sale of the option to purchase free and clear of all liens and interests pending a determination by this court of their rights to the proceeds. Notice of these agreements and the April 24, 1981, deadline for objecting to the trustee's proposed sales were sent to creditors. The sales were subsequently consummated after a resolution of a dispute involving FWC's claimed interest in the equipment.

From just prior to the filing of the petition until early April of 1981, Napco's former employees executed proofs of claim for wages and other debts which they assigned in trust to Graphics Arts International Union Local 277 or its designee for collection. On October 21, 1981, the union in turn reassigned those claims, in trust, to DILHR for the purpose of enforcing the rights of the employees under WIS.STAT. § 109.09(2). Thereafter, on December 3, 1981, DILHR filed notice of a wage earners' lien in the total sum of $237,285.33 at the office of the Clerk of the Circuit Court for Waukesha County, Wisconsin, on behalf of sixty-eight of the debtor's former employees. The amounts claimed included earned wages, birthday pay, holiday pay, vacation pay, pension deductions, two weeks notice pay, and other deductions such as credit union payments and United Fund contributions.

## II. *Standard of Review*

■ Rule 8013 of the Federal Rules of Bankruptcy provides as follows:

On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy court's judgment, order or decree or remand with instructions for further proceedings. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the

bankruptcy court to judge the credibility of the witnesses.

Conclusions of law made by the bankruptcy court are reviewed *de novo.* *See In re Kimzey,* 761 F.2d 421, 423 (7th Cir.1985).

DILHR has raised three issues on appeal: first, whether Wis.Stat. § 109.09(2) permits the establishment of a prior statutory lien on the property of the debtor which is now held in trust by the trustee; secondly, if a lien is acquired, can the trustee avoid the lien pursuant to 11 U.S.C. § 545; and finally, did the bankruptcy court err in failing to lift the automatic stay regarding DILHR's lien.

Defendants have also raised issues in their response to DILHR's issues. Essentially, three issues are raised: first, if DILHR is permitted to acquire a lien under § 109.09(2), does that lien have retroactive priority over previously perfected interests of secured creditors; secondly, is it permissible for DILHR to litigate in a bankruptcy proceeding in United States District Court an issue of state law previously litigated in a state circuit court; and finally, if a lien is acquired by DILHR pursuant to § 109.09(2), does that lien extend to the cash proceeds in the hands of secured creditors who sold their interests in the property of the debtor.

## III. *Analysis*

■ Judge Clevert held that "the creation of a lien pursuant to WIS.STAT. § 109.09(2) satisfies the Bankruptcy Code's definition of a statutory lien." Wis.Stat. § 109.09(2) provides as follows:

Pursuant to its authority under sub. (1) to take assignments of wage claims and wage deficiencies and to maintain actions for the benefit of employes, the department shall have a lien upon all property of the employer, real or personal, located in this state for the full amount of any wage claim or wage deficiency. Such lien shall take precedence over all other debts, judgments, decrees, liens, or mortgages against the employer and may be enforced in the manner provided in ss. 409.501 and 409.507 and 779.09 to 779.12, insofar as such provisions are applicable. Any such lien shall exist as of the last

date on which services were performed for the employer and for which wages are due and owing.

Judge Clevert further held, that section 109.09(2) does not apply to insolvent employers. Judge Clevert also held that section 109.09(2) is not invalidated by the Supremacy Clause because the statute does not affect the priority scheme set up by the bankruptcy laws. There is no dispute on appeal that the type of lien at issue is classified as a statutory lien. There is a dispute over whether the lien applies to insolvent employers and whether the lien takes priority over secured creditors. After reviewing the legislative history accompanying the creation of 109.09, this Court is of the opinion that the section does not apply to insolvent employers as Judge Clevert found.[1] The statute was created as a protection for the situation where

> the employer shuts down all or part of his business because he has decided to relocate in another community or another state, has sold his business to or merged with another business enterprise, has liquidated or otherwise disposed of his business, or has decided to automate all or part of his business operations.

*Wisconsin Legislative Report No. 9 to the 1975 Legislature on Legislation Relating to Employee Protection in Business Closings, A.B. 595 Revising State Law Relating to Wage Payments, Claims and Collections, SLSC–RL–75–9,* Dan Furback, Staff Attorney, April 15, 1985 at 1–2. There is no mention in this history of the insolvent business; rather, it is focused on discretionary business choices. Further, it is noted in the history that the section does not apply to insolvent businesses

> [b]ecause the state is largely preempted by federal bankruptcy laws from enacting wage priorities and other protections for employees in situations where an employer is insolvent....

*Id.* at 1. Based upon the foregoing history, it is clear that DILHR's lien does not apply to Napco Graphics because it is insolvent.

After reaching this conclusion, Judge Clevert went on to address whether a lien can be avoided if the interpretation of the legislative history is correct. Judge Clevert held that a lien created pursuant to 109.09(2) may be avoided by the trustee pursuant to 11 U.S.C. § 545 because the lien was not perfected on the date Napco Graphics filed the Chapter 7 petition. DILHR argues that pursuant to 546(b), the trustee may not avoid the lien. The defendants argue on the other hand that the bankruptcy court failed to decide whether the lien was retroactive, and therefore, if it could be avoided by the trustee.

■ Section 109.09(2) states that DILHR's lien "shall take precedence over all other debts, judgments, decrees, liens or mortgages against the employer...." The statute further provides that the lien "shall exist as of the last date on which services were performed for the employer and for which wages are due and owing." Most of the services for which wages were due and owing were rendered in February 1981. On March 2, 1981, Napco Graphics filed its petition for bankruptcy. On October 21, 1981, Graphic Arts International Union Local 277 assigned the wage claims in trust to DILHR. On December 3, 1981, DILHR then filed the notice of wage earners' lien in Waukesha County.

Based upon the language of the statute, the lien in this case existed in February 1981 and took priority over any other debts, judgments, decrees, liens or mortgages taken against Napco on or after the date. There is no language, however, in the statute[2] providing that the § 109.09(2) lien takes precedence over prior secured creditors who have perfected their interest prior to the date the 109.09(2) lien arose.

In *Farmers and Merchants Bank v. Terminal Electric Co.,* No. 80–CV–1801, slip op. (Waukesha Cir.Ct. Dec. 3, 1981), the court held that a 109.09(2) lien was not retroactive and was not prior to liens held

1. Judge Crabb adopted this holding in *Wisconsin Department of Industry, Labor and Human Relations v. Kubly,* 65 B.R. 845, 849 (W.D.Wis. 1986).

2. No legislative history has been presented to the Court regarding the retroactivity of the lien.

by financial institutions. The Court alternatively stated that if such lien took priority, it would be unconstitutional as exceeding the police powers of the state. DILHR was a party in the *Terminal* case and lost on the issue, but did not appeal the issue to a higher court. Defendants argue in this case that collateral estoppel precludes DILHR from relitigating the same issues in this Court.

"The doctrine of collateral estoppel relieves parties of the burden of relitigating identical issues and promotes judicial economy by preventing needless litigation." *United States v. Hoffman*, 643 F.Supp. 346, 348 (E.D.Wis.1986). Four elements are required in order for collateral estoppel to apply:

(1) the issue sought to be precluded must be the same as that involved in the prior action,

(2) the issue must have been actually litigated,

(3) the determination of the issue must have been essential to the final judgment, and

(4) the party against whom estoppel is invoked must be fully represented in the prior action.

*Klingman v. Levinson*, 831 F.2d 1292, 1295 (7th Cir.1987). Mutuality of parties is not required. *Hoffman*, 643 F.Supp. at 348.

This case meets the elements necessary for collateral estoppel: (1) the retroactive issue in this case is identical to the issue in *Terminal*, (2) the issue was actually litigated, (3) final judgment in *Terminal* was granted based upon the retroactive issue, and (4) DILHR was fully represented in the *Terminal* case.

The bankruptcy court, however, did not apply the doctrine of collateral estoppel because of the potential impact of the decision on persons who were not parties to the *Terminal* case. The bankruptcy court quoted Restatement (Second) of Judgments § 28(5)(a) comment h (1982) which provides:

Potential adverse impact on persons not parties. There are many instances which the nature of an action is such that the judgment will have a direct impact on those who are not themselves parties. For example, an agency of government may bring an action for the protection or relief of particular persons or of a broad segment of the public, or an individual may sue as representative of a class. In such cases, when a second action is brought, due consideration of the interests of persons not themselves before the court in the prior action may justify relitigation of an issue actually litigated in that action.

The bankruptcy court applied that section to this case. The use of the law set forth in comment h should only be applied in rare cases. Restatement (Second) of Judgments § 28(5)(a) comment g (1982). This Court is not persuaded that comment h should be applied to the present case because its application would result in its application each time the retroactivity of the lien was raised by DILHR. Collateral estoppel could never be applied to the lien issue because in each new case where the issue is raised, there would be new employees involved, and thus, it could be argued that applying collateral estoppel in each new case is unjust because new employees are involved. Although the employees are new, the problem and situation is the same: they are owed wages and/or benefits from an employer. The same arguments will be made in each case. Furthermore, it is also important to recognize that the *Terminal* court was a state court interpreting a state statute and its constitutionality. Also, the *Terminal* decision was not appealed to a higher court and that decision was a conscious choice by DILHR. DILHR's failure to appeal should not be rewarded by this Court. If DILHR disagreed with the state court's decision, appeal was the proper course of action. Thus, it is the determination of this Court that the doctrine of collateral estoppel should be applied to the retroactivity lien issue. Hence, DILHR is precluded from relitigating the retroactivity issue here.

Nevertheless, even if this Court did not apply collateral estoppel in the present case, it is this Court's conclusion that the

lien is not prior to the liens of secured creditors whose liens arose and were perfected prior to the date the wage lien arose.

■ Further, assuming the existence of a valid lien held by DILHR in this case, DILHR argues on appeal that the bankruptcy court erred in holding that the lien is voidable under 11 U.S.C. § 545(2) which provides:

The trustee may avoid the fixing of a statutory lien on the property of the debtor to the extent that such lien—

\* \* \* \* \* \*

(2) is not perfected or enforceable on the date of the filing of the petition against a bona fide purchaser that purchases such property on the date of filing of the petition, whether or not such a purchaser exists[.]

In short, the trustee can avoid all statutory liens unless they are perfected on the date of the petition. The bankruptcy court held that the 109.09(2) lien does not arise until the wage claim is assigned to DILHR. In this case, the wage claims were assigned on October 21, 1981, and thus, the court held the lien was not perfected or enforceable on March 2, 1981 when the bankruptcy petition was filed.

DILHR argues, however, that 11 U.S.C. § 546(b) applies to this case. Section 546(b) provides as follows:

The rights and powers of a trustee under sections 544, 545, and 549 of this title are subject to any generally applicable law that permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of such perfection. If such law requires seizure of such property or commencement of an action to accomplish such perfection, and such property has not been seized or such action has not been commenced before the date of the filing of the petition, such interest in such property shall be perfected by notice within the time fixed by such law for such seizure or commencement.

Although other statutory liens may come within the scope of this section, the lien at issue does not fit within 546(b) because as Judge Clevert aptly stated:

Section 109.09(2) does not discuss the perfection of a wage earners' lien; it does not require seizure of the property subject to the wage earners' lien; it does not require notice of the lien; and it does not fix a time within which any action must be taken against a property subject to the lien.

At oral argument on this appeal, DILHR argued that Wis.Stat. § 893.44 provides a two-year statute of limitations for an action for the collection of wages and salaries. If DILHR is arguing that this two-year statute of limitations is the amount of time DILHR has to perfect the lien, this statute of limitation is extremely outlandish and unfair to other lien holders who have time limits which are specifically set forth in the statutes, and the limits are most certainly less than two years. DILHR advances an incredible time limit to read into a statute. DILHR also argues that the notice requirement essentially is not required in the case of wage liens. DILHR stated at argument that "it seems quite clear that if there are wages due and owing, that the employer or his successer, the trustee here, should know about that or should be presumed to know about it." DILHR also argues that in Section 779.02(1), the lien chapter, notice is not required where the employer contracts directly with the employee. Although notice is not required in § 779.02(1), the situation is different in this instance because first, the employer is insolvent and secondly, this lien arises from prior wages that are due and owing. The notice requirement serves as a protection to other creditors. Notice is required. Section 546(b) is not applicable to the present situation.

■ DILHR argues on appeal that the bankruptcy court erred in maintaining the automatic stay. DILHR argues that the "enactment and administration of claims under workers' compensation laws to determine employers' compensability are a valid exercise of state police or regulatory power and the automatic stay is lifted in that case." The bankruptcy court addressed this argument and held that DILHR ac-

564

tions regarding the wage claims are for the benefit of the employees, and therefore, 11 U.S.C. § 362(b)(4) which provides that the filing of a petition for bankruptcy does not operate as a stay in an action or proceeding by a "governmental unit to enforce such governmental units police or regulatory power" is not applicable.

The legislative history for this section provides that "where a governmental unit is suing a debtor to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory, or attempting to fix damages for violation of such law, the action or proceeding is not stayed under the automatic stay." H.R.Rep. No. 595, 95th Cong., 1st Sess. 343 (1977); S.Rep. No. 989, 95th Cong., 2d Cong. 52 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5838, 6299. In the wage claim matter, DILHR is not pursuing the debtor because of a violation of law, but because an employer has become insolvent. This is not a violation of state law.

■ DILHR also argues that because the bankruptcy court failed to act on its request to lift the stay within 30 days after the request or final hearing, the stay has expired. This argument was not presented to the Bankruptcy Court. No explanation has been presented explaining the failure to notify the bankruptcy court of its "alleged error" and this Court finds that accordingly it is not proper for this Court to address that argument.

The filing of the notice of lien in Waukesha County was a violation of the automatic stay. If the stay expired after 30 days because the bankruptcy court did not rule on the request to lift the stay, DILHR did not file a new notice of its statutory lien after the 30 days. Thus, a proper notice was not filed. The bankruptcy court did not err in its analysis of the automatic stay issue.

Because of the Court's decision above, it is unnecessary to address the final issue raised by defendants on appeal which is whether if 109.09(2) permits DILHR to acquire a lien, does the lien extend to cash proceeds which are held by secured credi-

tors after they sold their interests in the property of the debtor.

IV. *Conclusion*

Based upon the foregoing, the Court REVERSES the bankruptcy court's decision on the issue of collateral estoppel and AFFIRMS the bankruptcy court on all other issues raised on appeal.