Gary G. Pfister, Plaintiff-Appellant-Cross-Respondent,

v.

MILWAUKEE ECONOMIC DEVELOPMENT CORPORATION, Defendant-Respondent,†

FIRST BANK (N.A.), Defendant-Respondent-Cross-Appellant,†

PRECISION ANALYTICAL LABORATORY, INC., Wisconsin Department of Development, LINC Quantum Analytics and Polaris Capital Corporation, Defendants.

Court of Appeals

*No. 96–0314. Oral argument September 9, 1997.—Decided January 13, 1998.*

(Also reported in 576 N.W.2d 554.)

†Petitions to review denied.

On behalf of the plaintiff-appellant-cross respondent, the cause was submitted on the brief of *Mark S. Diestelmeier, David A. McClurg* and *Steven B. Rynecki* of *von Briesen, Purtell & Roper, S.C.,* of Milwaukee,

and the reply brief of *Irvin B. Charne* of *Hall, Patterson & Charne, S.C.*, of Milwaukee. There was oral argument by *Irvin B. Charne*.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Laura E. Campbell* of *Friebert, Finerty & St. John, S.C.*, of Milwaukee. There was oral argument by *Laura E. Callan* of *Solheim, Billing & Grimmer, S.C.* of Madison.

On behalf of the defendant-respondent-cross appellant, the cause was submitted on the briefs of *Charles G. Crosse IV, Grant C. Killoran,* and *Paul E. Prentiss* of *Michael, Best & Friedrich*, of Milwaukee. There was oral argument by *Grant C. Killoran*.

Amicus Curiae brief was filed by *John E. Knight* and *James E. Bartzen* of Madison for Wisconsin Bankers Association.

Before Fine, Schudson, and Curley, JJ.

SCHUDSON, J. Gary G. Pfister appeals from the trial court's order granting partial summary judgment to First Bank, N.A., the Milwaukee Economic Development Corporation (MEDC), and Precision Analytical Laboratory, Inc. (PAL), his former employer, based on its determination that §§ 109.03(5) and 109.09(2), STATS., as amended in 1993, do not apply retroactively and, therefore, that his wage claim lien against PAL does not take priority over the pre-existing liens of First Bank and MEDC.

First Bank cross-appeals from the same trial court order granting partial summary judgment, to the extent that the trial court also determined that the statutes, prospectively applied, are constitutional and do give wage claim liens priority over all other security

interests (except those explicitly excluded by statute), including pre-existing ones.

MEDC, a respondent in the appeal, does not cross-appeal. MEDC's arguments in response to Pfister's appeal, however, address and necessarily involve the issues First Bank pursues in its cross-appeal. The Wisconsin Bankers Association, as *amicus curiae*, has also filed a brief. It urges this court to affirm the trial court determination that Pfister's lien is subordinate to First Bank's lien and, regardless of retroactivity, to construe the statutes as not giving an employee's wage claim lien priority over pre-existing liens. PAL, the Wisconsin Department of Development, Linc Quantum Analytics, and Polaris Capital Corporation neither appeal nor cross-appeal.[1]

We conclude that the trial court correctly determined that §§ 109.03(5) and 109.09(2), STATS., as amended, do establish that an employee's wage claim lien has priority over all other liens (except those explicitly excluded by statute), including pre-existing ones. We also conclude, however, that the trial court erred in determining that these amended statutes do not apply retroactively. Accordingly, the circuit court order for partial summary judgment is affirmed in part and reversed in part.

## I. Background

On June 28, 1994, Pfister filed a "PETITION FOR LIEN UNDER WIS. STATS. § 109.09." On June 29, 1994, Pfister also filed his complaint in the action lead-

---

[1] By our order of September 11, 1996, we accepted jurisdiction over the interlocutory appeal and cross-appeal of the partial summary judgment. After reviewing the briefs on appeal, we ordered oral argument, which was held before this court on September 9, 1997.

ing to this appeal.[2] The trial court's memorandum decision summarized the allegations of and relationship between the petition and complaint:

> Pfister filed a petition for a wage lien pursuant to Section 109.09(2) Wis. Stats. on June 28, 1994 against all of the assets of his former employer, PAL. This suit was filed the following day alleging that PAL breached its September 24th, 1991 employment agreement with him by failing to pay him all of the performance based commissions due him. The first, second and third counts in his complaint allege that PAL owes him a total of $143,763.00 in back commissions for the fiscal years 1991–92, 1992–93 and 1993–94. Count 4 alleges that PAL owes him a Chapter 109 civil penalty of

---

[2] Preliminarily, we note that First Bank argues that Pfister never filed a lien because his petition preceded his complaint. First Bank contends: (1) Pfister's June 28 petition merely stated that he intended to file a lien; and (2) the statutes require that an action be brought before a lien may exist. We disagree.

Section 109.03(5), STATS., as amended, states, in part, that "[a]n employe who brings an action against an employer under this subsection shall have a lien." Section 109.09(2), STATS., states, in part, that the lien "takes effect when the department or employe files a verified petition claiming the lien," and "[t]he lien ceases to exist if the department or the employe does not bring an action to enforce the lien within the period prescribed in s. 893.44 for the underlying wage claim." Pfister's petition begins by stating that Pfister "makes and files this Claim for Lien," and concludes, "**WHEREFORE**, Gary G. Pfister claims a lien . . . ." The language of the petition to which First Bank refers simply says that Pfister also "intends to bring an action to enforce this lien within the time period prescribed in Wis. Stat. § 893.44 for his underlying wage claim." That additional stated intention, however, does not destroy the petition's other explicit references to claiming and filing the lien. Thus, we do not read the statutes to require the complaint to precede the petition.

50-percent of his entitlement or an additional $71,881.50.[3] Count 6 embodies a breach of contract claim which realleges the total amount of unpaid commissions constituting the breach. The seventh count seeks damages of $435,000 for wrongful termination of his employment contract. Only PAL is implicated in these counts.

It is the fifth count of the complaint that concerns all of the other defendants as creditors of PAL. In Count 5 Pfister seeks a determination that his wage lien is superior to all of their liens, as provided in Section 109.09(2), Stats., and seeks to foreclose on his wage lien.

(Footnote added.)

Years before Pfister filed his petition and complaint, and long before the enactment of the 1993 amendments, First Bank and MEDC also perfected their security interests against PAL, for approximately $594,000 and $142,000, respectively.[4] On April 20, 1995, PAL filed a voluntary petition for relief under

---

[3] The potential civil penalty is set forth in § 109.11(2)(a), STATS., which provides, in part:

a circuit court may order the employer to pay to the employe, in addition to the amount of wages due and unpaid and in addition to or in lieu of the criminal penalties . . . increased wages of not more than 50% of the amount of wages due and unpaid.

[4] In fact, First Bank and MEDC perfected their interests before Pfister even *began* employment with PAL. At oral argument before this court, however, in response to extensive questioning, both First Bank and MEDC explained that they were not basing any of their theories on that chronology. They acknowledged that although they disagreed with Pfister's interpretation of the statutes, they agreed with his view that the application of the statutes should not vary according to whether

Chapter 11 of the United States Bankruptcy Code. A receiver was appointed, and PAL's assets were liquidated, generating approximately $350,000 for potential distribution. By stipulation of the parties, the liquidated proceeds remain in escrow pending the outcome of the parties' cross-motions for partial summary judgment relating to the relative priority of their liens.

The trial court concluded that under the 1993 amended versions of §§ 109.03(5) and 109.09(2), STATS., an employee's wage claim lien is a "superpriority lien" taking precedence over all other security interests (except those excluded by statute), including all security interests perfected prior to the date an employee's wage claim lien is established. The trial court also concluded, however, that the 1993 amendments to the statutes were not procedural; rather, that they were substantive and, therefore, could not be applied retroactively. Thus, the trial court determined that Pfister's wage claim lien could not be given priority over the First Bank and MEDC security interests, which had been perfected prior to December 9, 1993, the effective date of the amended statutes.

## II. Pfister's Appeal

### A. Introduction

Pfister argues that in granting partial summary judgment to First Bank and MEDC, the trial court erred in concluding that the 1993 amendments to §§ 109.03(5) and 109.09(2), STATS., did not apply retroactively and, therefore, did not give his wage claim lien priority over the pre-existing security interests of First Bank and MEDC. He contends that the trial court

their security interests were perfected before or after he began his employment with PAL.

incorrectly concluded that the amendments were substantive rather than procedural. Pfister maintains that because the amendments essentially added nothing more than an enforcement mechanism to the law, they produced only procedural changes and, therefore, that the amended statutes should have been applied retroactively to his wage claim lien. Pfister is correct.

Partial summary judgment is appropriate if the submissions establish "that there is no genuine issue as to any material fact and that the moving party is entitled to a [partial] judgment as a matter of law." *See* RULE 802.08(2), STATS. Our review of a trial court's grant of partial summary judgment is *de novo*. *See Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816, 820 (1987). Further, "whether a statute is prospective or retroactive presents a question of statutory construction to which we also apply an independent standard of review." *J.G. v. State*, 149 Wis. 2d 624, 628, 439 N.W.2d 615, 616 (Ct. App. 1989).

Section 109.03(5), STATS., as amended, provides:

ENFORCEMENT. Except as provided in sub. (1), no employer may by special contract with employes or by any other means secure exemption from this section. Each employe shall have a right of action against any employer for the full amount of the employe's wages due on each regular pay day as provided in this section <u>and for increased wages as provided in s. 109.11 (2),</u> in any court of competent jurisdiction. <u>An employe may bring an action against an employer under this subsection without first filing a wage claim with the department under s. 109.09 (1). An employe who brings an action against an employer under this subsection shall have a lien upon all property of the employer, real or</u>

personal, located in this state as described in s. 109.09 (2).

1993 Wis. Act 86, § 2 (underlined words added by amendment). Section 109.09(2), STATS., as amended, provides:

~~Pursuant to~~ The department, under its authority under sub. (1) to ~~take assignments of wage claims and wage deficiencies and to~~ maintain actions for the benefit of employes, ~~the department~~ or an employe who brings an action under s. 109.03(5) shall have a lien upon all property of the employer, real or personal, located in this state for the full amount of any wage claim or wage deficiency. ~~Such~~ A lien under this subsection takes effect when the department or employe files a verified petition claiming the lien with the clerk of the circuit court of the county in which the services or some part of the services were performed pays the fee specified in s. 814.61 (5) to that clerk of circuit court and serves a copy of that petition on the employer by personal service in the same manner as a summons is served under s. 801.11 or by certified mail with a return receipt requested. The department or employe must file the petition within 2 years after the date that the wages were due. The petition shall specify the nature of the claim and the amount claimed, describe the property upon which the claim is made and state that the petitioner claims a lien on that property. The lien shall take precedence over all other debts, judgments, decrees, liens or mortgages against the employer and may be enforced in the manner provided in ss. ~~409.501 to 409.507 and~~ 779.09 to 779.12, 779.20 and 779.21, insofar as such provisions are applicable. ~~Any such lien shall exist as of the last date on which services were performed for the employer and for which wages are due and owing.~~ The lien ceases to exist if

254

the department or the employe does not bring an action to enforce the lien within the period prescribed in s. 893.44 for the underlying wage claim.

1993 Wis. Act 86, § 4 (stricken words deleted by amendment; underlined words added by amendment).

Thus, § 109.09(2), STATS., previously *and* as amended, provides that "[t]he lien shall take precedence over all other debts, judgments, decrees, liens or mortgages against the employer." Therefore, the critical difference between the old and new versions is clear: the old version provided that the department (then called the Department of Industry, Labor, and Human Relations (DILHR)), was responsible for enforcing a wage claim lien on the employee's behalf; the amended statute added the employee's right to enforce the lien directly.

The trial court concluded, however, that the 1993 amendments were substantive "because the employee is for the first time, given an absolute personal right to a lien against an employer which, in the earlier version of the statute, only DILHR had and then only if it chose to take an assignment of the employee's wage claim." Therefore, because the amended statute, in the trial court's estimation, made more than a procedural change, it could not be applied retroactively. *See Betthauser v. Medical Protective Co.*, 172 Wis. 2d 141, 147, 493 N.W.2d 40, 42 (1992) (generally, substantive statute applies prospectively; procedural statute applies retroactively). We conclude, however, that the amendments simply added an enforcement mechanism to a previously established right, thus producing a procedural change. Therefore, the amended statutes do apply retroactively to Pfister's wage claim lien.

## B. Retroactive Application

For many years, Wisconsin workers have had the right to pursue wage claim liens against their employers. In 1915, the legislature granted employees the private right of action to enforce their wage claims.[5] In 1931, the legislature first authorized DILHR's predecessor, the Industrial Commission, to investigate and attempt to equitably resolve individual wage disputes, and to sue employers on wage claims for which it had received assignment.[6] In 1975, the legislature further provided for DILHR's authority to assist the enforcement of an employee's right to recover improperly withheld wages by establishing DILHR's power "to maintain actions for the benefit of employes," pursuant to § 109.09(2), STATS. Then, in 1993, the legislature, apparently responding to the inability of DILHR to handle the volume of wage claim lien cases coming to it each year, amended the statute to enable employees to enforce their own liens.[7]

---

[5] The right was established pursuant to § 1729(a), STATS., *see* Laws of 1889, ch. 474, subsequently renumbered as § 103.39, STATS., Laws of 1923, ch. 291, § 3, which was later repealed by the Laws of 1975, ch. 380, § 3, which created Chapter 109.

[6] DILHR's authority was established pursuant to § 101.10 (14), STATS., Laws of 1931, ch. 262, § 2, subsequently renumbered as § 101.21, STATS., which was repealed by Laws of 1975, ch. 380, § 1.

[7] Based on its review of the legislative history of the 1993 amendments to Chapter 109, the trial court commented that DIHLR "had a massive backlog of complaints," and that "the proposed changes would enable the department . . . to complete investigations in a 'more timely manner' and the new process would save staff time." Thus, the trial court explained, "[f]ar from correcting a broad and general social or economic problem, which wage protection laws invariably attempt to do, it appears

Thus, Pfister correctly contends that in addition to adding provisions relating to the filing and notice procedures, "[t]he 1993 amendments to Chapter 109 simply enlarged [the employee's wage claim] remedy by giving individual employees the option of enforcing that lien on their own as an alternative to requesting DILHR to enforce the lien for their benefit." As Pfister effectively explains:

> [Chapter 109] has always authorized employes to pursue their own claim in court, and has included penalties for employers who fail to pay wages. The chapter has always allowed for a superpriority wage claim lien against an employer's property to secure the payment of unpaid wages. The 1993 amendments did not affect any of those basic aspects of Chapter 109.
>
> The only aspect of Chapter 109 that the 1993 amendments did affect was the *procedures* for filing and enforcing wage claims and wage claim liens; *i.e.*, the procedures related to the remedial aspects of the chapter. The amendments provided employes with the option of enforcing the superpriority wage lien in their own name as an alternative to requesting that the Department pursue the lien for them.

Therefore, as Pfister persuasively argues:

> Given the apparent intent to *enhance* wage claimants' ability to collect improperly withheld wages by giving them the right to independently enforce their wage claim liens, it is unreasonable to assume that the legislature intended to provide them a lien right which would be less extensive and less effective in

that the lien right was given directly to the employee, at least in part, in order to ease the workload of DILHR."

collecting their wages than that held by the Department.

Wisconsin case law interpreting and applying lien laws supports Pfister's argument.

The Wisconsin Supreme Court has "consistently held . . . that the lien statutes of this state are remedial in character and are to be liberally construed." *Goebel v. National Exchangors, Inc.*, 88 Wis. 2d 596, 606, 277 N.W.2d 755, 760 (1979). Further, "[w]here changes in legislation affect a remedial or procedural statute, the statute is to be applied retroactively unless there is a clearly expressed legislative intent to the contrary or unless retroactive application will disturb contracts or vested rights." *Salzman v. DNR*, 168 Wis. 2d 523, 528, 484 N.W.2d 337, 339 (Ct. App. 1992). The supreme court has clarified the difference between substantive and procedural statutes:

> *"If a statute simply prescribes the method–the 'legal machinery' used in enforcing a right or remedy, it is procedural.* If, however, the law creates, defines or regulates rights or obligations, it is substantive—a change in the substantive law of the state. *A remedial statute is one which is related to remedies or modes of procedure which do not create new or take away vested rights, but only operate in furtherance of a remedy or confirmation of rights already existing."*

*Betthauser*, 172 Wis. 2d at 148, 493 N.W.2d at 42 (1992) (quoting *City of Madison v. Town of Madison*, 127 Wis. 2d 96, 102, 377 N.W.2d 221, 224 (Ct. App. 1985)) (emphasis added). Similarly, the supreme court has observed that remedial statutes are ones that "only go to confirm rights already existing and in furtherance of the remedy, by curing defects *and adding to the*

*means of enforcing existing obligations." Mosing v. Hagen,* 33 Wis. 2d 636, 641, 148 N.W.2d 93, 96 (1967) (quotation marks and quoted source omitted) (emphasis added).

Under both the previous and amended versions of § 109.03(5), STATS., the "rights already existing"—the right to earned wages and the right to a wage claim—belong to the employee. Although, under the previous version of § 109.09(2), STATS. (1991–92), DILHR could enforce the wage claim lien, it did so only as assignee, in trust of the employee's claim, by virtue of its authority "to maintain actions for the benefit of employes." Then, as now, DILHR had no direct interest in any recovery gained through enforcement of the lien. Then, as now, DILHR could only enforce the lien on the basis of the employee's revocable assignment of the wage claim. First Bank's and MEDC's potential claims arising from their contracts had been subordinate to potential wage claim liens, pursued by DILHR, and continued to be subordinate to the same substantive claims pursued directly by employees under the amended law. Thus, whether DILHR or the employee enforced the lien, the "rights already existing" remained the same. *See* § 109.03(5), STATS.

■
Therefore, the 1993 amendments providing employees the opportunity to directly enforce their wage claim liens were procedural. They "add[ed] to the means of enforcing existing obligations." *Mosing,* 33 Wis. 2d at 641, 148 N.W.2d at 96 (internal quotation marks and quoted source omitted); *see also Bruner v. Kops,* 105 Wis. 2d 614, 619, 314 N.W.2d 892, 894–95 (Ct. App. 1981) (where amendment to § 949.15, STATS., provided crime victims authority to pursue claims against perpetrators in addition to claims on which

Department of Justice was subrogated to victims, law was remedial; it " 'afford[ed] a remedy, or improve[d] or facilitate[d] remedies already existing for the enforcement of rights and the redress of injuries.' "). Accordingly, absent any other factor to the contrary, the statutes apply retroactively.

### C. Impairment of Contract

First Bank and MEDC argue, however, that there is another factor. They maintain that even if the amended statutes are remedial, the statutes must not be applied retroactively in this case because, under *Chappy v. LIRC*, 136 Wis. 2d 172, 401 N.W.2d 568 (1987) (incorporating *Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400 (1983)), retroactive application would substantially impair their pre-existing contracts with PAL. We disagree.

*Chappy* reiterates that "the interdiction of statutes impairing the obligation of contracts does not prevent the State from exercising such [police] powers as are vested in it for the promotion of the common weal, or are necessary for the general good of the public, though contracts previously entered into between individuals may thereby be affected." *Chappy*, 136 Wis. 2d at 186–87, 401 N.W.2d at 574 (internal quotation marks and quoted source omitted). *Chappy* explains that to evaluate whether a statute impermissibly impairs a contract, a court must determine: (1) "whether the challenged statute has 'operated as a substantial impairment of a contractual relationship,' " *id*. at 187, 401 N.W.2d at 575 (quoted source omitted); and (2) whether, if the statute has operated as a substantial impairment, "a significant and legitimate public purpose behind the legislation" saves the statute

260

nonetheless. *Id.* Further, if "a legitimate public purpose has been found, the inquiry is whether the challenged legislation ' "[is based] upon reasonable conditions and [is] of a character appropriate to the public purpose justifying [the legislation's] adoption." ' " *Id.* at 188, 401 N.W.2d at 575 (quoted source omitted). In this case, however, we need not consider any factors under the second criterion because, we conclude, the amended statutes not only do not "operate[ ] as a substantial impairment" of the contractual relationships between PAL and First Bank or MEDC, the amended statutes do not impair their contracts at all.

"[W]hether the obligation of contract has been impaired [by a statute] is a question of law" which we review without deference to the trial court. *Reserve Life Ins. Co. v. La Follette*, 108 Wis. 2d 637, 647, 323 N.W.2d 173, 178 (Ct. App. 1982). "State legislation impairs a contract by imposing an obligation upon a party beyond the obligations the party had agreed to undertake." *Id.* at 648, 323 N.W.2d at 178. If legislation "alters the contractual expectations of the parties," it impairs their contract. *State ex rel. Cannon v. Moran*, 111 Wis. 2d 544, 555, 331 N.W.2d 369, 375 (1983). In the instant case, we conclude that the amended statutes do not impair First Bank's or MEDC's contracts with PAL because, simply stated, the amended statutes do not in any way alter First Bank's or MEDC's contractual rights.

The amended statutes do not "alter the contractual expectations" First Bank or MEDC reasonably could have had because, long before the statutes were amended, secured lenders knew of the potential impact of wage claim liens on any security interests they

might have in an employer's property. First Bank's and MEDC's security interests are and always have been subject to superior encumbrances on PAL's property. First Bank and MEDC, knowing the law and acting reasonably, would always have expected a wage claim lien to be a superior encumbrance. After all, a lien for wages is a lien for money that should have been paid in the first instance—money that, in the ordinary course of business, would not have been available to pay any claims of a secured party.[8] First Bank's and MEDC's contracts with PAL still carry the unaltered right to

[8] *See* § 109.03(1), STATS., which provides, *inter alia*, "Every employer shall as often as monthly pay to every employe . . . all wages earned by such employe to a day not more than 31 days prior to the date of such payment."

At oral argument, this court posed the following scenario and question to counsel for MEDC:

> Assume for the moment that Mr. Pfister really should have been paid almost the $144,000 he says he should have been paid. . .. Wouldn't that mean then that in the ordinary course of business, if everything had just been flowing smoothly, Mr. Pfister would have been paid about $144,000 by PAL? That money never would have belonged to First Bank; it never would have belonged to MEDC. But then, unfortunately, PAL goes belly-up. And when PAL goes belly-up, Mr. Pfister has been paid; he's happy; he's off looking for another job somewhere, and there is that much less—$144,000 less in the pot for those with secured interests. If that's the scenario, wouldn't Mr. Pfister or anyone else come in here and say, "Well wait a minute, businesses go belly-up all the time; banks suffer losses as a result, but they certainly shouldn't get a windfall that would come by allowing them to get money that they never would have gotten had it simply been paid out to the employees in the first instance." What's wrong with that argument?

Except for (1) noting the self-evident distinction between money from an ongoing business and money from the assets of a bankrupt business, and (2) suggesting the dubious proposition that "but for the loan, the employee would not have the job," counsel was unable to answer.

enforce their security interests. Their contracts, however, could never include any implied right to somehow elevate their liens over wage claim liens given priority under § 109.09(2), STATS., both before and after the amendments.[9]

---

[9] Because we conclude that the amendments did not alter First Bank's or MEDC's contractual rights and, therefore, did not reduce their potential lien recoveries, we need not address First Bank's and MEDC's additional argument that, in this case, impairment of their contracts is established by the fact that Pfister's claim, if successful, would consume most of PAL's liquidated value.

Further, having determined that no impairment of First Bank's or MEDC's contracts occurred, we reject their arguments that Pfister's wage claim lien denied them due process of law or constituted an unconstitutional "taking" of their contractual or vested rights and property under the contract clauses of the federal and state constitutions. Pfister's lien takes nothing belonging to First Bank or MEDC. If valid, Pfister's wage claim lien merely confirms his right to receive money that belonged to him, not to First Bank, and not to MEDC.

First Bank and MEDC have relied heavily on two federal district court decisions construing § 109.09(2), STATS., and determining the priority of claims under federal bankruptcy law. *See Wisconsin Department of Industry, Labor & Human Relations v. Kubly*, 65 B.R. 845 (W.D. Wis. 1986), *vacated on jurisdictional grounds*, 818 F.2d 643 (7th Cir. 1987); and *Wisconsin Department of Industry, Labor & Human Relations v. Ludwig (In re Napco Graphic Arts, Inc.)*, 83 B.R. 558 (E.D. Wis. 1988). We conclude, however, that neither case controls the instant one.

The appeals court decided *Kubly* on jurisdictional grounds without resolving the statutory issue, under § 109.09(2), STATS., that formed the basis for the district court's decision. *Kubly*, 818 F.2d at 644. And while the district court in *Napco* concluded that § 109.09(2) did not provide priority to a wage claim lien pursued by DILHR over previously perfected claims in bank-

### D. Commission Payments

██

First Bank, but not MEDC, additionally argues that even if the amended statutes are to be retroac-

---

ruptcy, *see Napco,* 83 B.R. at 561, it did so based on legislative history from 1975, *see* 1975 WISCONSIN LEGISLATIVE REPORT No. 9, LEGISLATION RELATING TO EMPLOYEE PROTECTION IN BUSINESS CLOSINGS, A.B. 595 *Revising State Law Relating to Wage Payments, Claims and Collections,* WLCS-RL–75–9, Dan Fernbach, Staff Attorney, April 15, 1975, at 1–2, leading it to conclude "that the section does not apply to insolvent businesses." *Napco,* 83 B.R. at 561. The court's analysis, however, did not take into account the more extensive history of Wisconsin's wage claim lien, which we have attempted to recount in this opinion. Moreover, the *Napco* court's assumption regarding the preemptive impact of federal bankruptcy law does not preclude this court from determining the relative priority of creditors' claims under the Wisconsin statutes. Presumably, should such claims ever compete in federal bankruptcy proceedings, the federal courts would show deference to this court's determination. *See Kubly,* 65 B.R. at 848 ("The Court of Appeals for the Seventh Circuit has held that it is particularly appropriate for a federal court to abstain from interpreting a state statute where the state statute has not yet been construed by a state court and is susceptible of one construction that would render it free from constitutional infirmity and one construction that would not.") (citing *Waldron v. McAtee,* 723 F.2d 1348, 1351–53 (7th Cir. 1983)).

Additionally, *Napco* is factually distinguishable. DILHR filed the employees' wage claim liens *after* the employer in *Napco* petitioned for bankruptcy. *Id.* at 559–60. In the instant case, by contrast, Pfister filed his wage claim lien *before* PAL petitioned by bankruptcy. Whether that distinction would make a difference to a federal bankruptcy court determining the priority of claims is unclear. Reading between the lines of *Napco,* one could argue that the factual distinction is significant. At least two commentators, however, maintain that even when the

tively applied to Pfister's lien, we still must affirm the trial court's denial of Pfister's claim because "perform-ance-based commission payments" are not "personal services" for which compensation would be available under § 109.01(3), STATS. Although the nature of Pfis-ter's employment with PAL and the amount of his potential recovery may become factual issues for the trial court to resolve, we see no basis for First Bank's argument that performance-based commission pay-ments are not recoverable. Section 109.01(3), STATS., provides, *inter alia*, that " 'wages' mean remuneration payable to an employe for personal services, including salaries, *commissions* . . . bonuses and any other simi-lar advantages agreed upon between the employer and the employe or provided by the employer to the employes as an established policy." (Emphasis added.)

### E. Conclusion

Therefore, we conclude that §§ 109.03(5) and 109.09(2), STATS., as amended, apply retroactively to

---

employer has filed a petition in bankruptcy, a wage claim lien should not be avoidable by the bankruptcy trustee under federal law. *See* Richard H. Nowka and Jeff S. Taylor, *Kentucky Employees' Wage Liens: A Sneak Attack on Creditors, but Beware of the Bankruptcy Trustee*, 84 KY L.J. 317, 348 (1995–96). Interpreting Kentucky's wage claim lien statute in relation to a federal bankruptcy action, Nowka and Taylor con-tend that the wage claim lien is "unavoidable by a bankruptcy trustee in most situations." *Id.* at 318. They emphasize:

> Businesses often secure borrowings with their assets which is the precise reason why employees need to arm themselves with the lien. Why? Because the reasonable and logical interpretation of the lien statute should be that the lien has priority over such encum-brances, even when the encumbrances antedate the lien.

*Id.* at 317 (footnote omitted).

Pfister's wage claim lien and, accordingly, we reverse the trial court's order granting partial summary judgment to First Bank and MEDC.

## III. First Bank's Cross-Appeal[10]

First Bank, but not MEDC, cross-appeals the trial court's determination that the amended statutes do establish that wage claim liens have priority over pre-existing liens. The trial court concluded that "[t]he plain meaning of [§ 109.09(2), STATS.] is that the lien is a superpriority lien." The trial court was correct.

Whether the amended statutes establish that wage claim liens have priority over pre-existing liens presents an issue of statutory interpretation. *See Voss v. City of Middleton*, 162 Wis. 2d 737, 749, 470 N.W.2d 625, 629 (1991). Statutory interpretation involves a question of law which we review *de novo*. *See id.* In determining the meaning of the statute, we must first discern the legislative intent. *See Berna-Mork v. Jones*, 174 Wis. 2d 645, 650, 498 N.W.2d 221, 223 (1993). To ascertain that intent, we first examine the language of

---

[10] In response to First Bank's cross-appeal, Pfister argues, in part, that the trial court's determination (in his favor, that the statutes, prospectively applied, are constitutional) was *dicta*. He contends that First Bank seeks "the equivalent of a declaratory judgment" in an area where there "is no justiciable controversy." Pfister is wrong. Indeed, Pfister's contention is ironic given that if, in his appeal, he prevails on the issue of retroactivity, his success would be of no consequence if the statute, retroactively applied, did not survive First Bank's constitutional challenge in the cross-appeal. The issues of the appeal and cross-appeal are inextricably connected and, therefore, we do address First Bank's theory and Pfister's additional arguments in response to the cross-appeal.

the statute itself. *See id.* "If it clearly and unambiguously sets forth the legislative intent, it is the duty of the court to apply that intent to the case at hand and not to look beyond the language of the statute to ascertain its meaning." *Id.* at 650–51, 498 N.W.2d at 223 (citations omitted). Here, the statute is unambiguous and the legislature's intent is manifest.

▮▮▮

Now, as before the 1993 amendments, § 109.09(2), STATS., states that an employee's wage claim lien "shall take precedence over *all* other debts, judgments, decrees, liens or mortgages against the employer," except those explicitly excluded. (Emphasis added.) "It is a well-recognized rule of statutory construction that nontechnical words and phrases are to be construed according to their common and ordinary usage." *Ervin v. City of Kenosha*, 159 Wis. 2d 464, 484, 464 N.W.2d 654, 662 (1991). "The ordinary and common meaning of a word may be established by definition of a recognized dictionary." *Id.* at 484, 464 N.W.2d at 662–63. Webster's dictionary defines "all" as "each and every." WEBSTER'S THIRD NEW INT'L DICTIONARY 54 (Unabr. 1976). First Bank provides no legal or logical basis to support its contention that "*all* other" means something other than "*all* other."[11]

---

[11] As Pfister points out, the all-encompassing meaning of "all" in the statute also was implicitly recognized in the Legislative Reference Bureau's analysis of an unsuccessful proposal, attached to 1979 Senate Bill 137, attempting to limit the priority of wage claim liens under § 109.09(2), STATS., to those security interests filed *after* the employee's wage claim lien. The analysis stated, in part:

> Under current law . . . [t]he [d]epartment has a lien upon *all* real and personal property of the employer for payment of the claim or deficiency, which lien takes precedence over *all* other debts, judg-

First Bank contends, however, that the trial court's reading of the statute "potentially imperils the ability of the banking and commercial finance industry to confidently extend secured credit to Wisconsin Business," and urges this court "to make clear that a bank's prior, perfected security interest in an employer's business assets cannot be destroyed any time in the future by a single employee's wage claim." Historically, however, the legislature appears to have been concerned with the right of employees to receive the wages they are due, and the courts have upheld the enforcement of that right.

As early as 1862, the Wisconsin Supreme Court, in an action determining the priority of loggers' wage liens in relation to a prior security interest in the logs, commented that "it was the intention of the [wage lien] statute to give such workmen an *absolute lien . . .* as against everybody," and that "[t]heir claim is a *sacred lien." Paine v. Woodworth*, 15 Wis. 327, 332–33 (1862) (emphasis added).[12] The absolute or sacred nature of

---

ments, decrees, liens or mortgages against the employer, . . . *regardless of the time of recording.*

(Emphasis added.) The Legislative Reference Bureau analysis of the 1993 amendments to Chapter 109 reiterated that the scope of the wage claim lien would be the same under the amended statute. It stated, in part, that "[t]his bill provides that DILHR or an employee, if the employee brings an action against the employer on his or her own behalf, has a lien against the employer's property *as under current law.*" (Emphasis added.)

[12] Although separated by 136 years, *Paine v. Woodworth*, 15 Wis. 327 (1862), and the instant case show some remarkable similarities. For example, in *Woodworth*, the supreme court commented:

[W]e have no doubt that after work had been done for which the party was entitled to a lien under the Revised Statutes, and before the expiration of the time within which he might proceed to enforce

the wage claim lien flows from a simple proposition: if workers are not paid their wages, they and their families will suffer. As the United States Supreme Court recognized, depriving workers of their wages "may impose tremendous hardship on wage earners with families to support." *Sniadach v. Family Fin. Corp.*, 395 U.S. 337 (1969).

In countless cases, employees may file wage claim liens after other claimants have filed other liens. Nothing in the statutes suggests that the legislature intended workers to lose their wages merely because a bank or some other creditor arrived at the courthouse first. Further, § 109.09(2)'s specification of certain liens to which an employee's wage claim lien would *not* be superior supports Pfister's argument all the more. Under the doctrine of *expressio unius est exclusio alterius*, the statute precludes any argument that unspecified, pre-existing security interests would trump an employee's wage claim. *See C.A.K. v. State*, 154 Wis. 2d 612, 621, 453 N.W.2d 897, 901 (1990) ("[T]he enumeration of specific alternatives in a statute is evidence of legislative intent that any alternative not specifically enumerated is to be excluded."). Thus, we do not discern how paying workers the wages they have earned "imperils" the banking and commercial finance industry in any way. If that is a danger First Bank perceives, however, its plea would be to the legislature.

it, *it would be competent for the legislature to provide a new and more efficacious remedy, and that such lien might then be enforced according to that.* And the objection that the party had not complied with the old statute, would be of no avail. *That it is competent for the legislature to change the remedy in such cases, is too well understood to need argument.*

*Woodworth*, 15 Wis. at 332 (emphasis added).

Like the trial court, we conclude that "all" means "all." Now, as before the amendments, § 109.09(2), STATS., provides employee wage claim liens priority over all others, including the pre-existing security interests of First Bank. Accordingly, we reject First Bank's cross-appeal and affirm the trial court's order granting partial summary judgment to the extent that it determined that § 109.09(2), STATS., provides that employees' wage claim liens do take precedence over pre-existing security interests except those explicitly excluded by the statute.[13]

*By the Court.*—Order affirmed in part; reversed in part and cause remanded.

FINE, J. *(concurring).* I concur in the majority opinion, and write separately merely to point out what we do not, in my view, decide.

As the majority notes, First Bank and the Milwaukee Economic Development Corporation perfected their security interests before Gary G. Pfister started to work for Precision Analytical Laboratory. Majority op. at 250–51 n.4. Thus, at the time they obtained protection for their extension of credit to Precision, they had no way of knowing that their security was at the

---

[13] Having concluded in the appeal that First Bank and MEDC suffered absolutely no impairment of their contracts, we need not consider the additional arguments in the cross-appeal regarding whether application of the amended statutes would constitute an unconstitutional "taking" of property. The amended statutes took nothing from First Bank and MEDC; they continue to have the right to enforce their liens, subject to any other liens of higher priority. *See* footnote 9, *supra,* majority op. at 262–64.

mercy of Pfister's potential wage-claim lien. I thus question whether First Bank or Milwaukee Economic Development had sufficient knowledge "of the potential impact" (majority op. at 260) of Pfister's wage-claim lien on their perfected security interests to defeat their impairment-of-contracts argument. As the majority also notes, however, neither First Bank nor Milwaukee Economic Development makes this argument. Majority op. at 557 n.4. Accordingly, whatever merit it may have, that argument is waived in this case.

Under existing precedent, those who enter into economic arrangements that are already subject to state regulation or modification have no basis to complain that the state has impaired contractual relations if the state changes the rules so long as there is sufficient notice that and how the rules might change. *Veix v. Sixth Ward Bldg. & Loan Ass'n*, 310 U.S. 32, 38 (1940). *Veix* held that a person who purchased shares in a New Jersey building and loan association did not assert a valid impairment-of-contracts claim when, subsequent to the purchase and in response to the economic disruptions of the 1930s, the New Jersey legislature restricted his right to redeem those shares:

> It was while statutory requirements were in effect that [Veix] purchased his shares. When he purchased into an enterprise already regulated in the particular to which he now objects, he purchased subject to further legislation upon the same topic.

*Ibid.* Here, as the majority points out, First Bank and Milwaukee Economic Development were on notice that their security interests could be swallowed by wage-claim liens, and a subsequent change in the enforcement mechanism did not unconstitutionally impair

either their contracts with Precision or their perfected security interests. There may be situations, however, where a party extends credit to an employer in return for a security interest in that employer's property knowing that although its security interest can be subject to superpriority liens for unpaid wages, the employer's work force at the time is sufficiently small so that there is little risk that, given value of the property subject to the security interest, wage-claim liens will consume the security. Under such circumstances an unexpected jump in the employer's work force, which leads to wage-claim liens that were not anticipated (whether legitimate or a ruse to defeat the security) may raise impairment-of-contract considerations. As I understand it, we leave this issue for another day.