**In re AR ACCESSORIES GROUP, INC., Debtor.**

**Scott Peltz, Trustee of the AR Accessories Group, Inc. Liquidating Trust, and Bank One, Wisconsin, Plaintiffs,**

**v.**

**Wisconsin Department of Workforce Development, Defendant.**

**Bankruptcy No. 98–22580–JES. Adversary No. 98–2500.**

United States Bankruptcy Court, E.D. Wisconsin.

July 18, 2001.

## DECISION

JAMES E. SHAPIRO, Bankruptcy Judge.

This controversy pits the interests of Bank One, Wisconsin, on behalf of itself and as agent for First Bank Milwaukee N.A. and Harris Bank ("Lenders"), and Scott Peltz, trustee of AR Accessories Group, Inc. Liquidating Trust ("trustee") [1], against the Wisconsin Department of Workforce Development, on behalf of the former employees of the debtor ("Department"). Each side contends that it holds a lien interest superior to that of the other side. The parties have presented cross motions for partial summary judgment with respect to Counts 6, 7, and 10 of the adversary complaint brought by the Lenders and trustee and also with respect to the objection by the Lenders and trustee to the Department's proof of claim, which has been consolidated with this adversary proceeding.

A joint stipulation of facts has been submitted. Briefs and oral arguments have also been presented to the court.

This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(B), (K), and (O).

Robert M. Fishman, Brian L. Shaw, Shaw Gussis Domanskis Fishman & Glantz, Chicago, IL, for Trustee.

Peter C. Blain, Mark L. Metz, Thomas J. O'Brien, Reinhart Boerner Van Deuren Norris & Reiselbach s.c., Milwaukee, WI, for Lenders.

Richard E. Braun, Assistant Attorney General, Wisconsin Department of Justice, Madison, WI, for Defendant.

## SUMMARY JUDGMENT STANDARD

Under Fed.R.Civ.P. 56, made applicable to adversary proceedings by Fed. R. Bankr.P. 7056, summary judgment is appropriate where the pleadings and affidavits establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265

---

1. The Lenders hold a lien in substantially all of the debtor's assets. However, the trustee's interest is aligned with that of the Lenders by virtue of the debtor's confirmed plan of liqui-
dation. If the trustee and Lenders prevail in this dispute, it will result in a dividend for the unsecured creditors.

(1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). The court's responsibility at this stage is not to resolve any disputed issues of fact, but to determine whether any such material factual issues exist which would preclude the granting of a motion for summary judgment. *In re Scalia,* 214 B.R. 697, 702 (Bankr.E.D.N.Y.1997). A fact is material if it might affect the outcome of the suit under the governing law. *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510. The court must resolve all ambiguities and draw all reasonable inferences in the light most favorable to the non-moving party. *U.S. v. Rem,* 38 F.3d 634, 643 (2nd Cir. 1994); *Shank v. William R. Hague, Inc.,* 192 F.3d 675, 681 (7th Cir.1999).

### ISSUES INVOLVED

1. Is the Department's lien[2] void in violation of 11 U.S.C. §§ 362(a)(4) and (5)?

2. Is the Department's lien voidable under 11 U.S.C. § 549?

3. Is Wis. Stats. § 109.09(2) preempted by the Bankruptcy Code and the Supremacy Clause Article VI of the United States Constitution?

4. If the Department's proof of claim is not entitled to lien status, is it entitled to administrative or wage priority treatment under the Bankruptcy Code, in full or in part?

### FACTS

On March 13, 1998, the debtor filed a petition for relief under chapter 11 of the Bankruptcy Code. One week earlier, on March 6, 1998, the Department initiated an investigation of the debtor to determine whether there was a violation of Wis. Stats. § 109.07 (Wisconsin plant closing law). This investigation was prompted by complaints from Michael Miller, Mayor of the City of West Bend, and Janis Zommers, union representative of Local 7915, United Paperworkers International Union, both of whom alleged that there was insufficient advance notice of the plant closing at the West Bend, Wisconsin facility. The investigation was subsequently expanded to include the office facility on Brown Deer Road, Milwaukee, Wisconsin ("Brown Deer facility"). The Department continued its investigation after the chapter 11 petition was filed. On February 24, 1999, the Department made its initial determination concluding that there were mass layoffs at the manufacturing plant at West Bend and also at the Brown Deer facility. The Department further concluded that the layoffs at West Bend on February 27, 1998, and at the Brown Deer facility between February 27 and May 13, 1998, violated the Wisconsin plant closing law which required 60 days advance notice of business closing or mass layoff.

On June 11, 1998, the Department filed a petition for wage earners' lien under § 109.09(2) of the Wisconsin statutes with the Clerk of the Circuit Court of Milwaukee County and on June 12, 1998 filed a similar petition with the Clerk of the Circuit Court of Washington County. On August 7, 1998, the Department filed a proof of claim with the Clerk of the United States Bankruptcy Court for the Eastern District of Wisconsin in Case No. 98–22580 in the sum of approximately $6.95 million. In its claim, the Department stated that if this court concludes that the Department did not hold a valid lien, its claim is entitled to administrative priority in the alter-

---

**2.** Whenever the terms "Department's lien" and "wage earners' lien" appear in this deci-sion, they are interchangeable.

native under § 503 or wage priority under § 507 of the Bankruptcy Code. This proof of claim was subsequently amended twice: first, on August 9, 1999 in the sum of $4.87 million and later on November 1, 1999 in the sum of $5.27 million. Both amendments contained alternative requests for administrative or wage priority, as made in the original proof of claim. The Department's proof of claim included amounts purportedly owing to the debtor's former employees, some of whom are members of the United Paperworkers International Union Local 7915 ("union"). Although the union compromised its claim with the debtor, the Department contends that it is not bound by these terms with respect to the union employees for that portion of the claim consisting of plant closing wage claims under § 109.07 of the Wisconsin statutes. The order of this court which approved the compromise between the union and debtor stated, in part, that it "makes no determination as to the rights of Wisconsin respecting a claim that it might have under state or federal law ... nor of any parties' defenses to such claims."

In May of 1998 the debtor's assets were liquidated with the rights of the parties attaching to the net sales proceeds. These net sales proceeds totalled approximately $23,750,000. The Department and the Lenders entered into an agreement at a hearing before this court on June 22, 1998 involving Lenders' motion for a provisional release of the sale proceeds of the debtor's assets. That agreement provided that the issues of whether the Department's post-petition actions violated the automatic stay and whether Wis. Stats. § 109.09 was preempted by the Bankruptcy Code and by the Supremacy Clause of the United States Constitution shall be determined by this court. The parties also agreed that all remaining issues dealing with Wis. Stats. § 109 (including whether there was an un-

lawful violation of the business closing/mass layoff notification provisions) shall be held in abeyance with the Department preserving its right to ask this court to abstain in favor of a state court of competent jurisdiction as to these remaining issues.

The debtor and the creditors' committee's joint plan of liquidation was confirmed by this court on March 8, 1999.

### LAW

This dispute centers around Wisconsin's wage earners' lien law, more specifically Wis. Stats. § 109.09(2), and its impact upon this bankruptcy case. This law first became effective in Wisconsin on June 11, 1976 ("1975 Act") and has since undergone several revisions. The 1975 Act created a super-priority lien in favor of wage earners over all other liens, without any exception, regardless of whether such other liens arose prior or subsequent to the wage earners' lien.

In 1993, Wis. Stats. § 109.09(2) was revised ("1993 Act"). This revision, while retaining super-priority status for wage earners, made several changes. These changes included extending the right to enforce this lien under Wis. Stats. § 109.03(5) to the former employees. Previously, only the Department was able to enforce the wage claim liens after receiving an assignment of the wage claims from the former employees. The 1993 Act, without explanation, also removed the following sentence which had appeared in the 1975 Act:

Any such lien shall exist as of the last date on which services were performed for the employer and for which wages are due and owing.

The 1993 Act added the following sentence:

The department or employee must file a petition within two years after the date that the wages were due.

The 1993 Act also declared that the lien shall cease to exist unless an action to enforce the lien is brought within the 2–year statute of limitations under Wis. Stats. § 893.44.

In 1995, Wis. Stats. § 109.09(2) was revised to give the state-created environmental lien a priority over the wage earners' lien ("1995 Act").

In 1997, the environmental lien priority over the wage earners' lien was removed ("1997 Act 27"). Later in 1997, a further amendment was made, effective June 17, 1998—less than one week after the Department filed its lien petitions in this case—which entirely rescinded the wage earners' super-priority lien status ("1997 Act 237").

The current version of Wis. Stats. § 109.09(2), effective September 1, 2000, again restored super-priority status to the wage earners' lien over all liens, both before and subsequent to the wage earners' liens—except for liens held by financial institutions which originated before the creation of the wage earners' lien ("1999 Act 198"). There is now pending in the Wisconsin legislature 2001 Senate Bill 17 which, if enacted, would once again give the wage earners' lien precedence over a lien of a financial institution that originated both before and after the wage earners' lien was created.

The Wis. Stats. § 109.09(2) version appearing in the 1995–1996 statutes (essentially the 1993 Act with the single addition made in 1995 giving the environmental lien a priority over the wage earners' lien) applies in this case. This statute, together with other statutes and the Supremacy Clause of the United States Constitution which are all referred to in this decision, are set forth in pertinent part in the annexed appendix. Hereafter, whenever Wis. Stats. § 109.09(2) is discussed, unless otherwise specifically noted, it shall mean the version of this statute which applies in this case and which appears in Part IV of the annexed appendix.

The original 1975 Act of Wis. Stats. § 109.09(2) applied in the federal cases of *In re Napco Graphic Arts, Inc.*, 51 B.R. 757 (Bankr.E.D.Wis.1985) (aff'd. in part, reversed in part 83 B.R. 558 (E.D.Wis.1988)), and *Matter of Kubly*, 65 B.R. 845 (W.D.Wis.1986). The subsequent version of Wis. Stats. § 109.09(2), now before this court, was also the identical version before the Court of Appeals in *Pfister v. Milwaukee Economic Development Corp.*, 216 Wis.2d 243, 576 N.W.2d 554 (Wis.Ct.App.1998). *Napco* and *Kubly* both held that the 1975 Act was limited to solvent employers and had no application in a bankruptcy case. In *Napco*, Judge Clevert recognized that Wis. Stats. § 109.09(2) had not as yet been interpreted by any Wisconsin appellate courts. *See Napco*, 51 B.R. at 761. *Pfister*, however, which was decided after *Napco* and *Kubly*, held that Wis. Stats. § 109.09(2) applied to both solvent and insolvent employers. The implications of Wis. Stats. § 109.09(2) must be considered when an insolvent employer is in bankruptcy if this court is to follow *Pfister*. It is well established that bankruptcy law normally looks to state law to determine property interests. *Butner v. U.S.*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979); *In re Badger Lines, Inc.*, 202 F.3d 945 (7th Cir.2000); *In re Badger Lines, Inc.*, 224 Wis.2d 646, 590 N.W.2d 270 (Wis.1999); *In re Copper King Inn*, 918 F.2d 1404 (9th Cir.1990); *In re Paramount Int'l*, 154 B.R. 712, 714 (Bankr.N.D.Ill.1993). The Wisconsin Supreme Court has not ruled on this issue. However, *Pfister* was decided by the intermediate Wisconsin Court of Appeals.

Even in the absence of a ruling by the highest court in the state, a federal court must defer a determination of state law to a state appellate court unless it is convinced that the highest court of the state would decide the issue differently. *In re Jones*, 219 B.R. 1013, 1017 (Bankr.N.D.Ill. 1998). This court is not convinced that the Wisconsin Supreme Court, which in fact denied a petition for review of *Pfister* (*Pfister v. Milwaukee Economic Development Corp.*, 217 Wis.2d 518, 580 N.W.2d 688 (1998)) would rule differently.

It therefore accords deference to *Pfister* and determines that Wis. Stats. § 109.09(2) applies to an insolvent employer.

### DID THE DEPARTMENT'S POST–PETITION ACTIONS VIOLATE § 362(a) AND THEREBY RENDER ITS LIEN VOID?

Lenders and the trustee contend that the Department's lien violated §§ 362(a)(4) and (5) and is therefore void because:

1. The lien, if created at all, arose post-petition.

2. Even if the lien was created pre-petition, it is not within the exception to the automatic stay under § 362(b)(3) because Wis. Stats. § 109.09(2) does not contain an express provision for perfection relating back to an earlier time.

Each of these grounds shall now be analyzed.

### *When, if at all, was the lien created?*

Lenders and the trustee both argue that the wage earners' lien was not created pre-petition. However, each has a different view as to when the lien arose.

■ Lenders assert that there is no lien until either an employee or the Department brings an action under Wis. Stats.

§ 109.03(5). Sec. 109.03(5) reads in part that: "An employee who brings an action against the employer under this subsection shall have a lien upon all property of the employer . . . ." Lenders then argue that because no action was ever brought by either the Department or any employee— pre-petition or post-petition—the lien never was created. That argument is flawed for several reasons. Wis. Stats. § 109.03(5) relating to the "bringing of an action" only applies with respect to an action taken by employees and not by the Department. The following language in Wis. Stats. § 109.09(2) provides support for the conclusion that the bringing of an action is an act to enforce a lien already in existence:

> The lien ceases to exist if the Department or the employee does not *bring an action to enforce the lien* (underlining added for emphasis) within the period prescribed in § 893.44 for the underlying wage claim

A similar situation occurred in *In re Lionel Corp.*, 29 F.3d 88, 93 (2nd Cir.1994), where the court declared that if noncompliance with a statute terminated the lien, then the lien must have been in existence before such noncompliance. That same argument by the Lenders, asserting an action must first be brought before the wage earners' lien arises, was also presented and rejected in *Pfister*. *See Pfister*, 216 Wis.2d at 249 n. 2, 576 N.W.2d 554.

■ The trustee's position on when the wage earners' lien arises differs from that held by the Lenders. The trustee asserts that the lien arises when, in accordance with Wis. Stats. § 109.09(2), the Department or employee files a verified petition claiming a lien with the Clerk of the Circuit Court of the county where the services were performed, pays the prerequisite filing fee, and serves a copy of that petition upon the employer by personal

service. The trustee then points out that all of these steps occurred post-petition and therefore the automatic stay was violated. That argument, too, is rejected by this court. Wis. Stats. § 109.09(2) deals with lien perfection, not lien creation. The phrase "takes effect" as it appears in Wis. Stats. § 109.09(2) refers to perfection. Both the Lenders and the Department acknowledge that in their respective briefs to this court. The post-petition acts taken by the Department were merely steps required to complete perfection of the Department's lien interest.

■■■ The Department declined to express its view on when the wage earners' lien is created under Wisconsin law. Instead, it argues that, even if the lien came into existence after the bankruptcy petition was filed, the lien would not violate the automatic stay because of § 362(b)(3) of the Bankruptcy Code. The court also rejects that view. The exception to the automatic stay under § 362(b)(3) only applies if an "interest in property" held by a creditor was created before the filing of bankruptcy. *See Makoroff v. City of Lockport,* 916 F.2d 890, 892 (3rd Cir.1990). *See also Equibank NA v. Wheeling–Pittsburgh Steel Corp.,* 884 F.2d 80, 85 (3rd Cir.1989); and *In re Perona Bros. Inc.,* 186 B.R. 833, 837 (D.N.J.1995). Under § 101(37) of the Bankruptcy Code, a "lien" is an "interest in property." *In re Microfab, Inc.,* 105 B.R. 152, 157 (Bankr.D.Mass.1989).

■■ The only exception to the automatic stay which permits both creation and perfection of a lien after a bankruptcy case has been filed appears in § 362(b)(18) of the Bankruptcy Code. This section is limited to a specific type of lien and declares that the filing of a bankruptcy petition

does not stay certain taxing entities from creating or perfecting statutory liens for *ad valorem* property taxes which became due after the commencement of the case. There is no similar exception to the automatic stay with respect to wage earners' liens. If there is to be such an exception to the automatic stay which would permit the creation of post-petition wage earners' liens, it is for Congress to create. As a general rule of statutory construction, where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied in the absence of a contrary intent. *Andrus v. Glover Construction Co.,* 446 U.S. 608, 616–17, 100 S.Ct. 1905, 1910, 64 L.Ed.2d 548 (1980); *In re Candor Diamond Corp.,* 26 B.R. 850, 851 (Bankr. S.D.N.Y.1983).

■■■ The original 1975 Act version of Wis. Stats. § 109.09(2) stated that the lien existed "as of the last date on which services were performed for the employer and for which wages are due and owing." Although this sentence was omitted from the Wis. Stats. § 109.09(2) version now before this court, nothing in the 1993 Act or in its legislative history provides any indication that such omission was made for the purpose of changing the date when the lien was created. The sentence added in the 1993 Act declaring that the Department or employee must file the petition within two years after the date that the wages were due further suggests that there was no intent to make a change in the time when the wage earners' lien came into existence. A study of the legislative history to the 1993 Act further buttresses this conclusion. In a memorandum dated April 15, 1993 from Howard Bernstein, general counsel to the Office of the Secretary for DILHR[3] to J. Sheehan Donoghue,

---

**3.** DILHR (Department of Industry, Labor and Human Relations) is now known as Department of Workforce Development.

the division administrator for the Equal Rights Division of DILHR, regarding the legislative draft of the 1993 Act, the following appears:

> This draft adds some specific procedures to the existing provision that gives DILHR a lien on an employer for the amount of a wage claim or wage deficiency.

> The procedures basically consist of two things: (1) formally notifying the employer of the lien, by formal service or certified mail, and (2) filing a lien petition with the clerk of circuit court. The draft clears up a longstanding legal problem by specifying that the lien does not take effect until both of these steps have taken place. (The current lien statute simply states that the lien "exists" as soon as the work has been done; employers and their bankers have argued that it is unconstitutional to give priority to a lien without providing notice to the person who is subject to the lien.)

> *These changes are intended to do no more than allow wage lien claims to go forward as any other lien claim does.* (underlining added for emphasis) A lien could not be enforced or foreclosed without the filing of a lawsuit and a judgment of attachment or foreclosure from the court.

The purpose of the 1993 Act was to provide procedures for perfection and enforcement—not for creation—of the lien. Lenders' counsel, in oral argument, conceded that the 1993 Act was a procedural statute. This same conclusion was reached in *Pfister* where the court stated that:

> We conclude, however, that the amendment simply added an enforcement mechanism to a previously established

right, thus producing a procedural change.

*Pfister,* 216 Wis.2d at 254, 576 N.W.2d 554.

This court therefore rejects the interpretations of all parties to this dispute as to the time that the wage earners' lien was created. Instead, it concludes that the lien was created when the last services which remained unpaid were performed. All parties agree that there are some unpaid pre-petition wages due in this case, the extent of which is unknown.

Therefore, the lien was created before this bankruptcy case was filed.

**Must there be an express "relation back" provision in Wis. Stats. § 109.09(2) for the exception to the automatic stay under § 362(b)(3) to apply?**

Sec. 362(b)(3) states that the automatic stay does not pertain to any act to perfect an interest in property subject to perfection under § 546(b). Sec. 546(b), in turn, permits post-petition perfection of an interest in property held by an entity acquiring an interest in property before the date of perfection if "any generally applicable law" permits such perfection. Based upon the legislative history of § 546(b), the term "generally applicable law" means that the law must apply to cases both inside and outside of bankruptcy. Wis. Stats. § 109.09(2), which also applies both inside and outside of bankruptcy, meets that requirement.

Lenders argue that § 546(b) applies only to statutory liens that contain specific language which relates back to a date preceding the filing of bankruptcy and asserts that there is no such express provision for relation back in Wis. Stats. § 109.09(2), citing *In re Electric City, Inc.,* 43 B.R. 336, 342 (Bankr.W.D.Wash.1984). Other courts, however, take the opposite view by finding that nothing in § 546(b) indicates that it applies only when the lienor fits

within a "relation back" statute. *In re Lionel Corp.*, 29 F.3d 88, 93 (2nd Cir.1994). *See also, In re Microfab, Inc.*, 105 B.R. 152, 158 (Bankr.D.Mass.1989); *229 Main Street Limited Partnership v. Commonwealth of Massachusetts Department of Environmental Protection*, 251 B.R. 186, 192–93 (D.Mass.2000).

This court is persuaded that the holdings in *Lionel Corp.* and in the cases aligned with *Lionel Corp.* should be followed. It concludes that there is no requirement for Wis. Stats. § 109.09(2) to expressly provide for retroactive perfection.

The Department's lien is not void under § 362(a). The post-petition actions taken by the Department fit within the exception created by § 362(b)(3).

### IS THE LIEN VOIDABLE UNDER § 549?

 The trustee and Lenders also submit that the Department's lien is voidable under 11 U.S.C. § 549. In order for the lien to be voidable under § 549, all of the following four elements must be established:

1. A transfer,
2. Occurring post-petition,
3. Of property of the estate, and
4. Without authorization by the court or by the Bankruptcy Code.

The Department contends that the fourth element is absent because its post-petition actions were authorized by the Bankruptcy Code. This court agrees, based on it conclusion that all of the Department's post-petition actions are within the § 362(b)(3) exception to the automatic stay. It therefore follows that the Department's lien was authorized by the Bankruptcy Code. The Department's lien is not voidable under § 549 because all four elements have not been satisfied.

### IS WIS. STATS § 109.02(2) PREEMPTED BY § 507(a) OF THE BANKRUPTCY CODE AND THE SUPREMACY CLAUSE OF THE UNITED STATES CONSTITUTION?

Under Wis. Stats. § 109.09(2), the Department's lien takes priority over the Lenders' lien. The Lenders, citing *Napco Graphic* and *Kubly*, contend that Wis. Stats. § 109.09(2) "reorders the priority of claims" in this bankruptcy case and is preempted by federal bankruptcy law and the Supremacy Clause of the United States Constitution. Lenders recognize that in *Napco* and *Kubly*, the respective courts held that there was no violation of the Supremacy Clause. However, Lenders submit that this holding resulted only because of the court's conclusion in both cases that Wis. Stats. § 109.09(2) did not apply to insolvent employers. Lenders assert that, if Wis. Stats. § 109.09(2) had been found to apply to insolvent employers (as this court now finds in light of *Pfister*), this statute would violate the priority scheme of the Bankruptcy Code and the Supremacy Clause of the United States Constitution.

The Department responds that Wis. Stats. § 109.09 does not conflict with the Bankruptcy Code and is not preempted by the Supremacy Clause because the priority scheme under § 507(a) applies only to unsecured claims and not to secured claims. The Department further states that the Lenders' contention that there would have been a violation of the Supremacy Clause in *Kubly* and *Napco* upon a finding that Wis. Stats. § 109.09 applied to insolvent employers is an incorrect reading of these cases.

██ This court agrees with the Department that the Bankruptcy Code priority scheme as set forth in § 507(a) deals

only with unsecured claims. Judge Clevert stated in *Napco* the following:

Inasmuch as federal bankruptcy law clearly leaves the determination of lien priorities to non-bankruptcy law, a state statute which creates a valid lien would not frustrate bankruptcy law and, therefore, would not be rendered invalid by the Supremacy Clause. It is, accordingly, determined that the statutory lien created by § 109.09(2) is not violative of the Supremacy Clause.

51 B.R. at 763.

The Supremacy Clause should not be invoked freely. It should only be applied where there is an unavoidable and inconsistent conflict with the Bankruptcy Code. In *Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971), the United States Supreme Court declared that, in determining whether the Supremacy Clause applies, a court must consider the purposes and policies which are served by the federal and state legislation. Only if the federal and state statutes are clearly in conflict with each other should the court then decide if the state law stands as an obstacle to the execution of the full purposes and objectives of Congress. *Perez v. Campbell*, 402 U.S. at 648, 91 S.Ct. 1704. Judge Squires in *In re Crossman*, 259 B.R. 301, 307 (Bankr.N.D.Ill.2001), aptly stated the following:

Federal and state statutes should be construed in a congruent fashion, rather than summarily found in conflict as an important application of the principle of comity between federal and state statutory schemes.

The Seventh Circuit Court of Appeals, in an *en banc* decision rendered in *In re Bentz Metal Products Co., Inc.*, 253 F.3d 283, recently held that a claim based upon the Indiana employees' wage lien statute is not pre-empted by § 301 of the Federal Labor Management Relations Act, which governs claims founded directly on rights created by collective bargaining agreements. The court declared that a state law is not pre-empted so long as it does not interfere or conflict with federal law.

In the case at bar, there is no unavoidable conflict between Wis. Stats. § 109.09(2) and § 507(a) of the Bankruptcy Code. A super-priority status afforded to wage earners by virtue of the lien is a recognition of the public policy to protect the wage earner who is necessarily dependent upon his or her labor for the sustenance and the support of himself or herself and his or her family. *See* Richard H. Nowka and Jeff S. Taylor *Kentucky Employees' Wage Liens: A Sneak Attack on Creditors, But Beware of the Bankruptcy Trustee* 84 Ky. L.J. 317, 322 (1995–1996). This article further states the following:

The statute is based upon a well-recognized policy which is written in the statutes of many states and of the federal government, and that is to protect the wage earner in many forms of public endeavor which is necessarily dependent upon his daily labor for the sustenance and the support of himself and family, and particularly in such forms as are recognized to be primarily for the benefit of the public good.

*Id.* at 322. *See also Pfister*, 216 Wis.2d 243, 268, 576 N.W.2d 554, which states: "If workers are not paid their wages, they and their families will suffer."

Wis. Stats. § 109.09(2) does not frustrate and is not inconsistent with the underlying policy of the Bankruptcy Code. It is not an obstruction to, nor does it do harm or violence to, the priorities under the Bankruptcy Code. Wis. Stats. § 109.09(2) is not a disguised priority. Wis. Stats. § 109.09(2) applies not only in bankruptcy, but also outside of bankrupt-

cy. The Ninth Circuit Court of Appeals in *Anchorage International Inn, Inc.,* 718 F.2d 1446, 1452 (9th Cir.1983), declared that there are certain types of state statutory liens, such as mechanics' liens, which are afforded full respect by the bankruptcy law. A wage earners' lien similarly should be given that respect, taking into account the purpose of this statute and the fact that Wisconsin has afforded it a super-priority status. The court in *Anchorage International Inn* further stated that there is no general policy against state-created liens that favor one class of creditors over others. *Anchorage International Inn,* 718 F.2d at 1451. The Ninth Circuit therefore rejected the trustee's contention that states cannot permit some creditors to receive more of the proceeds of the bankruptcy assets than others. It concluded that there is no statutory bankruptcy policy forbidding a state from giving one creditor a greater right to payment of its claim from a given asset than that conferred on another. *Anchorage International Inn, Inc.,* 718 F.2d at 1451.

Accordingly, this court concludes that the Wisconsin wage earners' lien is not preempted by § 507(a) of the Bankruptcy Code and the Supremacy Clause of the United States Constitution.

## IS THE DEPARTMENT'S CLAIM ENTITLED TO PRIORITY TREATMENT UNDER THE CODE?

■■■■ The Department's proof of claim states that, if the Department's lien is found to be invalid, its claim should be treated as either an administrative priority under §§ 503(b)(1) and 507(a)(1) or a wage priority claim under §§ 507(a)(3) and 507(a)(4). This claim is comprised of two

portions: unpaid wages and other benefits actually earned by the former employees ("wage claim portion") and damages arising out of alleged plant closing violations, attorneys' fees, business surcharges, and civil penalty assessments ("constructive portion"). Lenders and trustee do not challenge the wage claim portion with respect to the requested priority treatment. They do, however, contend that the constructive portion of this claim is not entitled to any priority treatment as a matter of law.

This court has determined that the wage earners' lien is valid. It now determines that the wage claim portion of its proof of claim for pre-petition unpaid wages [4] is covered by this lien. This holding renders moot the Department's alternative request for priority treatment of the unpaid pre-petition wage claim portion of its proof of claim.

The treatment of the constructive portion of this claim, however, presents another matter. Certain genuine issues of material facts must first be resolved before determining how the constructive portion of this claim is to be treated. These issues include:

1. Whether there was a violation by the debtor of the Wisconsin plant closing law and

2. If there was a violation, the amount of the constructive portion of this claim and whether such amount also includes the plant closing claims of the union employees.

If it is found that there was no violation of the Wisconsin plant closing law, no further inquiry is necessary. However, if it is found that the debtor did violate the Wisconsin plant closing law, the amount allow-

---

**4.** The court is unaware of any claim being made by the Department of the existence of

any unpaid post-petition wages.

able under the constructive portion of the claim then becomes an issue. At this time, however, that determination is premature.

### CONCLUSION

■ The version of Wis. Stats. § 109.09(2) in existence when this bankruptcy petition was filed on March 13, 1998 is controlling. The court fully recognizes the Lenders' public policy argument that giving the wage earners' lien a priority over the Lenders' lien would have a chilling effect in the commercial market with respect to the making of loans. On the other hand, there is also a powerful public policy argument in favor of the wage earners—namely, the need to ensure that wage earners and their families are not deprived of earned wages. The priority of liens is a matter for the legislature. It is the court's task to interpret the version of Wis. Stats. § 109.09(2) which existed on March 13, 1998 when this bankruptcy case was filed. This court concludes that, under the version of Wis. Stats. § 109.09(2) which applies here, the wage earners' lien trumped the Lenders' lien.

The wage earners' lien is not void under § 362 or voidable under § 549. It is a valid lien.

Wis. Stats. § 109.09(2) is not preempted by the Bankruptcy Code and the Supremacy Clause of the United States Constitution.

There are genuine issues of material fact which must first be resolved before addressing the question of how the constructive portion of the Department's claim is to be treated.

The motions for partial summary judgment of Lenders and the trustee are **DENIED**. The motion for partial summary judgment of the Department is **GRANTED**.

A separate order shall issue.

### APPENDIX

**History of Wisconsin Statute 109.09(2)**

I. **(Original language)**(Effective as law as of June 11, 1976)

Pursuant to its authority under sub. (1) to take assignments of wage claims and wage deficiencies and to maintain actions for the benefit of employes, the department shall have a lien upon all property of the employer, real or personal, located in this state for the full amount of any wage claim or wage deficiency. Such lien shall take precedence over all other debts, judgments, decrees, liens or mortgages against the employer and may be enforced in the manner provided in ss. 289.09 to 289.12 and 409.501 to 409.507, insofar as such provisions are applicable. Any such lien shall exist as of the last date on which services were performed for the employer and for which wages are due and owing.

II. **(Statute as amended after 1993 legislative session)**(Effective as law as of December 9, 1993)

The department, under its authority under sub. (1) to maintain actions for the benefit of employes, or an employe who brings an action under s. 109.03(5) shall have a lien upon all property of the employer, real or personal, located in this state for the full amount of any wage claim or wage deficiency. A lien under this subsection takes effect when the department or employe filed a verified petition claiming the lien with the clerk of the circuit court of the county in which the services or some part of the services were performed pays the fee specified in s. 814.61(5) to that clerk of circuit court and serves a copy of that petition on the employer by personal service in the same manner as a sum-

mons is served under s. 801.11 or by certified mail with a return receipt requested. The department or employe must file the petition within 2 years after the date that the wages were due. The petition shall specify the nature of the claim and the amount claimed, describe the property upon which the claim is made and state that the petitioner claims a lien on that property. The lien shall take precedence over all other debts, judgments, decrees, liens or mortgages against the employer and may be enforced in the manner provided in ss. 779.09 to 779.12, 779.20 and 779.21, insofar as such provisions are applicable. The lien ceases to exist if the department or the employe does not bring an action to enforce the lien within the period prescribed in s. 893.44 for the underlying wage claim.

III. **(Statute as amended after 1995 legislative session)**(Effective as law as of January 1, 1997)

The department, under its authority under sub. (1) to maintain actions for the benefit of employes, or an employe who brings an action under s. 109.03(5) shall have a lien upon all property of the employer, real or personal, located in this state for the full amount of any wage claim or wage deficiency. A lien under this subsection takes effect when the department or employe filed a verified petition claiming the lien with the clerk of the circuit court of the county in which the services or some part of the services were performed pays the fee specified in s. 814.61(5) to that clerk of circuit court and serves a copy of that petition on the employer by personal service in the same manner as a summons is served under s. 801.11 or by certified mail with a return receipt requested. The department or employe

must file the petition within 2 years after the date that the wages were due. The petition shall specify the nature of the claim and the amount claimed, describe the property upon which the claim is made and state that the petitioner claims a lien on that property. The lien shall take precedence over all other debts, judgments, decrees, liens or mortgages against the employer, except a lien filed under ss. 292.31(8)(i), 292.41(6)(d) or 292.81, and may be enforced in the manner provided in ss. 779.09 to 779.12, 779.20 and 779.21, insofar as such provisions are applicable. The lien ceases to exist if the department or the employe does not bring an action to enforce the lien within the period prescribed in s. 893.44 for the underlying wage claim.

IV. **(The statute as first amended in 1997)** (Effective as law as of October 14, 1997)

The department, under its authority under sub. (1) to maintain actions for the benefit of employes, or an employe who brings an action under s. 109.03(5) shall have a lien upon all property of the employer, real or personal, located in this state for the full amount of any wage claim or wage deficiency. A lien under this subsection takes effect when the department or employe filed a verified petition claiming the lien with the clerk of the circuit court of the county in which the services or some part of the services were performed pays the fee specified in s. 814.61(5) to that clerk of circuit court and serves a copy of that petition on the employer by personal service in the same manner as a summons is served under s. 801.11 or by certified mail with a return receipt requested. The department or employe must file the petition within 2 years after the date that the wages were due.

The petition shall specify the nature of the claim and the amount claimed, describe the property upon which the claim is made and state that the petitioner claims a lien on that property. The lien shall take precedence over all other debts, judgments, decrees, liens or mortgages against the employer, except a lien filed under ss. 292.31(8)(i) or 292.81, and may be enforced in the manner provided in ss. 779.09 to 779.12, 779.20 and 779.21, insofar as such provisions are applicable. The lien ceases to exist if the department or the employe does not bring an action to enforce the lien within the period prescribed in s. 893.44 for the underlying wage claim.

**V.** **(Statute as of the second 1997 amendments)**(Effective as law as of June 17, 1998)

(a) The department of workforce development, under its authority under sub. (1) to maintain actions for the benefit of employes, or an employe who brings an action under s. 109.03(5) shall have a lien upon all property of the employer, real or personal, located in this state for the full amount of any wage claim or wage deficiency.

(b) 1. A lien under par. (a) upon real property takes effect when the department of workforce development or employe files a notice of the lien with the clerk of the circuit court of the county in which the services or some part of the services were performed pays the fee specified in s. 814.61(5) to that clerk of circuit court and serves a copy of that petition on the employer by personal service in the same manner as a summons is served under s. 801.11 or by certified mail with a return receipt requested. The clerk of the circuit court shall enter the notice of the lien on the judgment and lien docket kept under s. 779.07.

(b) 2. A lien under par. (a) upon personal property takes effect when the department of workforce development or employe files a notice of the lien with the department of financial institutions, pays the fee specified in s. 409.403(5)(b) to the department of financial institutions and serves a copy of the notice on the employer by personal service in the same manner as a summons is served under s. 801.11 or by certified mail with a return receipt requested. The department of financial institutions shall place the notice of the lien in the same file as financing statements are filed under ss. 409.401 and 409.402.

(b) 3. The department of workforce development or employe must file the notice under subd. 1. or 2. within 2 years after the date on which the wages were due. The notice shall specify the nature of the claim and the amount claimed, describe the property upon which the claim is made and state that the person filing the notice claims a lien on that property.

(c) A lien under par. (a) takes precedence over all other debts, judgments, decrees, liens or mortgages that originate after the lien takes effect as provided in par. (b) 1. or 2., except a lien under s. 292.31(8)(i) or 292.81, and may be enforced in the manner provided in ss. 779.09 to 779.12, 779.20 and 779.21, insofar as those provisions are applicable. The lien ceases to exist if the department of workforce development or the employe does not bring an action to enforce the lien within the period prescribed in s. 893.44 for the underlying wage claim.

**VI.** **(The present statute, as amended after 1999 legislative session)(effective as law as of September 1, 2000)**

(a) The department of workforce development, under its authority under sub. (1) to maintain actions for the benefit of employees, or an employee who brings an action under s. 109.03(5) shall have a lien upon all property of the employer, real or personal, located in this state for the full amount of any wage claim or wage deficiency.

(b) 1. A lien under par. (a) upon real property takes effect when the department of workforce development or employee files a notice of the lien with the clerk of the circuit court of the county in which the services or some part of the services were performed, pays the fee specified in s. 814.61(5) to that clerk of circuit court and serves a copy of that petition on the employer by personal service in the same manner as a summons is served under s. 801.11 or by certified mail with a return receipt requested. The clerk of circuit court shall enter the notice of the lien on the judgment and lien docket kept under s. 779.07.

(b) 2. A lien under par. (a) upon personal property takes effect when the department of workforce development or employee files a notice of the lien with the department of financial institutions, pays the fee specified in s. 409.403(5)(b) to the department of financial institutions and serves a copy of the notice on the employer by personal service in the same manner as a summons is served under s. 801.11 or by certified mail with a return receipt requested. The department of financial institutions shall place the notice of the lien in the

same file as financing statements are filed under ss. 409.401 and 409.402.

(b) 3. The department of workforce development or employee must file the notice under subd. 1. or 2. within 2 years after the date on which the wages were due. The notice shall specify the nature of the claim and the amount claimed, describe the property upon which the claim is made and state that the person filing the notice claims a lien on that property.

(c) A lien under par. (a) takes precedence over all other judgments, decrees, liens or mortgages against the employer, except a lien of a financial institution, as defined in s. 69.03(1)(b), that originates before the lien under par. (a) takes effect or a lien under s. 292.31(8)(i) or 292.81, A lien under par. (a) may be enforced in the manner provided in ss. 779.09 to 779.12, 779.20 and 779.21 insofar as those provisions are applicable. The lien ceases to exist if the department of workforce development or the employee does not bring an action to enforce the lien within the period prescribed in s. 893.44 for the underlying wage claim.

**VII.** **Proposed legislation amending Wis. Stat. 109.09(2) (2001 Senate Bill 17)**

(c) A lien under par. (a) takes precedence over all other debts, judgments, decrees, liens, or mortgages against the employer, except a lien under s. 292.31(8)(i) or 292.81. A lien under par. (a) may be enforced in the manner provided in ss. 779.09 to 779.12, 779.20, and 779.21, insofar as those provisions are applicable. The lien ceases to exist if the department of workforce development or the employee does not bring an action to enforce the lien within the peri-

od prescribed in s. 893.44 for the underlying wage claim.

SECTION 2. Nonstatutory provisions.

(1) WAGE CLAIM LIENS. Notwithstanding section 109.09(2)(c), 1999 stats., a lien that exists under section 109.09(2)(a) of the statutes on the day before the effective date of this subsection takes precedence over a lien of a financial institution, as defined in section 69.30(1)(b) of the statutes, that originated before the lien under section 109.09(2)(a) of the statutes took effect.

## Wisconsin Statute 109.07

(1)(a) "Affected employee" means an employee who loses, or may reasonably be expected to lose, his or her employment with an employer who is required to give notice under sub. (lm) because of the business closing or mass layoff.

(b) "Business closing" means a permanent or temporary shutdown of an employment site or of one or more facilities or operating units at an employment site or within a single municipality that affects 25 or more employees, not including new or low-hour employees[.]

(d) "Employer" means any business enterprise that employs 50 or more persons in this state[.]

(f) "Mass layoff" means a reduction in an employer's work force that is not the result of a business closing and that affects the following numbers of employees at an employment site or within a single municipality, not including new or low-hour employees:

1. At least 25% or the employer's work force or 25 employees, whichever is greater; or

2. At least 500 employees[.]

(1m) Subject to sub. (5) or (6), an employer who has decided upon a business closing or mass layoff in this state shall promptly notify the subunit of the department that administers § 106.15, any affected employee, any collective bargaining representative of any affected employee, and the highest official of any municipality in which the affected employment site is located, in writing of such action no later than 60 days prior to the date that the business closing or mass layoff takes place[.]

(3)(a) If an employer fails to give timely notice to an affected employee as required under sub. (1m), the affected employee many recover, as provided under sub. (4), all of the following:

1. Pay, for the days during the recovery period described under par. (c) that the employee would have worked if the business closing or mass layoff had not occurred, based on the greater of the following:

a. The employee's regular rate of pay from the employer, averaged over the shorter of the 3-year period preceding the business closing or mass layoff or the entire period during which the employee was employed by the employer.

b. The employee's regular rate of pay from the employer at the time of the business closing or mass layoff.

2. The value of any benefit that the employee would have received under an employee benefit plan during the recovery period described under par. (c), but did not receive because of the business closing or mass layoff, including the cost of medical treatment incurred that would have been covered under the employee benefit plan[.]

(c) The recovery period under par. (a) begins on the day that the business closing or mass layoff occurs. The recovery period equals the number of days in the period

beginning on the day on which an employer is required to give notice under sub. (1m) and ending on whichever of the following occurs first:

1. The day that the employer actually gave the notice to the employee.

2. The day that the business closing or mass layoff occurred.

(4)(a) An employee whose employer fails to notify timely the employee under sub. (1m) may file a claim with the department. If the employee files a claim with the department no later than 300 days after the business closing or mass layoff, the department shall, in the manner provided in § 109.09, investigate the claim, determine the number of days that the employer was late in providing notice and, on behalf of the employee, attempt to recover from the employer the payment under sub. (3).

(b) If the department does not recover payment within 180 days after a claim is filed or within 30 days after it notifies the employee of its determination under par. (a), whichever is first, the department shall refer the claim to the department of justice. The department of justice may bring an action in circuit court on behalf of the employee to recover the payment under sub. (3).

(c) If the department of justice does not bring an action under par. (b) within 120 days after the claim is referred to it, the employee may bring an action in circuit court to recover the payment under sub. (3)[.]

**Wisconsin Statute 109.03(5).**

Enforcement [ . . . ] Each employee shall have a right of action against any employer for the full amount of the employee's wages due on each regular pay day as provided in this section and for increased wages as provided in § 109.11(2), in any court of competent jurisdiction. An employee may bring an action against an employer under this subsection without first filing a wage claim with the department under § 109.09(1). An employee who brings an action against an employer under this subsection shall have a lien upon all property of the employer, real or personal, located in this state as described in § 109.09(2).

**Relevant Bankruptcy Code provisions**

**11 U.S.C. § 101(37)** "lien" means charge against or interest in property to secure payment of a debt or performance of an obligation[.]

**11 U.S.C. § 362(a)** Except as provided in subsection (b) of this section, a petition filed under [ . . . ] this title, [ . . . ] operates as a stay, applicable to all entities, of-

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against the property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title[ . . . ]

**11 U.S.C. § 362(b)** The filing of a petition under [ . . . ] this title, [ . . . ] does not operate as a stay-

(3) under subsection (a) of this section, of any act to perfect, or to maintain or continue the perfection of, an interest in property to the extent that the trustee's rights and powers are subject to such perfection under section 546(b) of this title or to the extent that such act is accomplished within the period provided under section 547(e)(2)(A) of this title.

(18) under subsection (a) of the creation or perfection of a statutory lien for an ad valorem property tax [ . . . ] if such tax comes due after the filing of the petition.

**11 U.S.C. § 503(b)** After notice and a hearing, there shall be allowed administrative expenses [ . . . ] including-

(1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case.

**11 U.S.C. § 507(a)** The following expenses and claims have priority in the following order:

(3) [ . . . ] allowed unsecured claims, but only to the extent of $4000* for each individual or corporation, as the case may be, earned within 90 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first, for-

 *(Under the current Bankruptcy Code the dollar amount is $4300, but because this case was commenced prior to April 1, 1998, the applicable dollar amount is $4000).

(A) wages, salaries, or commissions, including vacation, severance, and sick leave earned by an individual [.]

**11 U.S.C. § 546(b)** The rights and powers of a trustee under sections 544, 545, and 549 of this title are subject to any generally applicable law that-

(A) permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection; or

(B) provides for the maintenance or continuation of perfection of an interest in property to be effective against an entity that acquires rights in such property before the date on which action is taken to effect such maintenance or continuation.

**11 U.S.C. § 549**

(a) Except as provided in subsections (b) or (c) of this section, the trustee may avoid a transfer of property of the estate-

(1) made after the commencement of the case; and [ . . . ]

(2)(B) that is not authorized under this title or by the court.

**Constitution of the United States, Article VI, Clause 2**

This Constitution, and the Laws of the United States [ . . . ], shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.